**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 94-60400
_____

EDDIE JAMES JOHNSON,

Petitioner-Appellant,

versus

WAYNE SCOTT, Director, Texas Department of
Criminal Justice, Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

(October 18, 1995)

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

I

Eddie James Johnson, a Texas death row inmate, appeals the district court's denial of his petition for writ of habeas corpus. Johnson was convicted of murdering David Magee, Virginia Cadena, and Elizabeth Galvan. *See* TEX. PENAL CODE ANN. § 19.03(a)(6)(A). After finding Johnson guilty, the jury returned affirmative findings to the two Texas special sentencing issues used in death penalty cases, *see* TEX. CODE CRIM. PROC. ANN. art. 37.071, and the court imposed a sentence of death. The Texas Court of Criminal Appeal affirmed Johnson's conviction and sentence, and later denied

rehearing.  *See Johnson v. State*, 803 S.W.2d 272 (Tex. Crim. App. 1990).  The United States Supreme Court denied certiorari.  *See Johnson v. Texas*, 501 U.S. 1259, 111 S. Ct. 2914, 115 L. Ed. 2d 1078 (1991).

Johnson sought postconviction relief in the state courts. Pursuant to the trial court's recommendation, the Texas Court of Criminal Appeals denied Johnson's state application for writ of habeas corpus.  Johnson then filed an application for writ of habeas corpus in the United States District Court for the Southern District of Texas.  After an evidentiary hearing on Johnson's ineffective assistance of counsel claim, the district court denied habeas relief, but issued a certificate of probable cause to appeal.

Johnson appeals the district court's denial of his writ of habeas corpus.  He contends that (1) he received ineffective assistance of counsel because of his attorneys' failure to rebut and effectively challenge the state's forensic evidence; (2) the trial court's failure to instruct the jury concerning the parole implications of a life sentence violated his Fourteenth and Eighth Amendment rights; and (3) he was denied a fair trial because of a juror's exposure to prejudicial information.

We affirm.

## II

Johnson argues that the district court erred in denying his

ineffective assistance of counsel claim.[1]  The district court found that although Johnson's attorneys' performance was deficient, Johnson was not prejudiced as a result.  Johnson contends that the district court erred in its prejudice analysis by (1) focusing exclusively on the effect of his attorneys' performance on the outcome of the case, and (2) using a sufficiency of the evidence standard.  Johnson contends that an application of the correct prejudice analysis would have resulted in a finding that he was prejudiced by his counsel's failure to develop or present forensic testimony.  We review ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Ineffective assistance of counsel is a mixed question of law and fact which we review *de novo*.  *Id.* at 698, 104 S. Ct. at 2070; *Baker v. Metcalfe*, 633 F.2d 1198, 1201 (5th Cir.), *cert. denied*, 451 U.S. 974, 101 S. Ct. 2055, 68 L. Ed. 2d 354 (1981).

To obtain reversal of a conviction or death sentence based on ineffective assistance of counsel, a convicted defendant must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  Because the defendant must prove both

---

[1]     Johnson relies on the following facts in the record.  Before Johnson's trial began, his attorneys became aware that the prosecution intended to prove its case partly through forensic evidence.  The trial court approved funds for the trial attorneys to hire forensic experts to assist the defense with fingerprinting, blood, serology, and ballistic evidence.  However Johnson's attorneys neither developed any forensic evidence nor prepared to rebut the prosecution's expert testimony.  As anticipated, the state presented serological and forensic evidence at Johnson's trial that implicated him in the murders.

deficiency and prejudice, a defendant's failure to prove either will be fatal to his claim. Because we find that Johnson was not prejudiced by the errors of his trial counsel, his ineffective assistance claim fails, and we need not address deficiency.[2]

To establish prejudice, a defendant must show that there is a reasonable probability that, but for his attorney's deficient performance, the factfinder would have had a reasonable doubt about his guilt. *Id.* at 695, 104 S. Ct. at 2068-69. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. The right to effective assistance of counsel is intended to ensure that the defendant receives a fair trial. *Id.* at 687, 104 S. Ct. at 2064. Therefore to establish prejudice, the defendant must show that counsel's errors were so severe as to deprive him of a fair trial with a reliable result. *Id.* In determining whether there was prejudice, we must look at the totality of the evidence before the jury.[3]

Johnson correctly alleges that the court's focus on the outcome of the case and the sufficiency of the "untainted" evidence implicating Johnson does not comport with the *Strickland* prejudice

---

[2]    By not discussing the *Strickland* deficiency prong, we do not imply that we necessarily agree with the district court's determination on this issue.

[3]    "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id.* at 695-96, 104 S. Ct. at 2069. A verdict that is only weakly supported by the record is more likely to have been affected by an attorney's errors than one with strong record support. *Id.* at 696, 104 S. Ct. 2069.

standard.[4]   The Supreme Court has stated that when analyzing prejudice in an ineffective assistance of counsel case, a court should not focus solely on outcome determination, without considering whether the result of the proceeding was unreliable or fundamentally unfair.  *Lockhart v. Fretwell*, ___ U.S. ___, 113 S. Ct. 838, 842-43, 122 L. Ed. 2d 180 (1993).  The touchstone of the prejudice inquiry is the fairness of the trial and the reliability of the jury or judge's verdict in light of any errors made by counsel, not solely the outcome of the case.  *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069.

Likewise the sufficiency of the "untainted" evidence should not be the focus of the prejudice inquiry.  The materiality standard under *Brady v. Maryland*,[5] is identical to the prejudice

---

[4]   In deciding that Johnson was not prejudiced by his counsels' performance, the district court held that even though an effective cross-examination of the state's expert witnesses has the potential for discrediting the entire case, to find prejudice, it would have to find that a reasonable jury could not have reached the same verdict if counsel had performed effectively. The court concluded that because of the amount of other circumstantial evidence linking Johnson to the murders, Johnson was not prejudiced by trial counsels' errors.

[5]   373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  *Brady* held that the prosecution's suppression of evidence favorable to an accused violates due process where the evidence is *material* either to guilt or punishment.  *Brady*, 373 U.S. at 87, 83 S. Ct. 1196-97.  In interpreting the materiality standard, the Supreme Court has adopted the *Strickland* formulation of prejudice and cites both ineffective assistance of counsel and *Brady* cases when defining materiality.  *See United States v. Bagley*, 473 U.S. 667, 682, 105 S Ct. 3375, 3383-84, 87 L. Ed. 2d 481 (1985) (opinion of Blackmun, J.) (adopting the *Strickland* formula); *Id.* at 685, 105 S. Ct. at 3385 (White, J., concurring in part and concurring in judgment) (also adopting *Strickland* standard); *Kyles v. Whitney*, ___ U.S. ___, 115 S. Ct. 1555, 1566, 131 L. Ed. 2d 490 (1995)(citing ineffective assistance of counsel and *Brady* cases alternatively).  The *Brady* materiality standard asks "[w]hether it is reasonably probable that a different result might have been obtained had the evidence been disclosed." *Lindsey v. King*, 769 F.2d 1034, 1043 (5th Cir. 1985).

standard under *Strickland*.  In *Kyles v. Whitley*,[6] the Supreme Court emphasized that materiality under *Brady* has never been a sufficiency of the evidence test.  Instead, the defendant must show that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  *Id.* at ___, 115 S. Ct. at 1566.

Despite the analytical errors of the district court, we find that a correct application of the prejudice standard to Johnson's case still results in a finding that Johnson was not prejudiced by his attorneys' conduct.  Johnson's attorneys failed to consult with or obtain the testimony of experts in forensic science to present favorable evidence to the jury and to assist defense counsel in trial preparation.  At the habeas corpus evidentiary hearing Johnson presented experts challenging much of the state's expert testimony.  The district court summarized the state's expert testimony and Johnson's habeas experts' testimony as follows:

> (1) At trial, the state's hair expert testified the hair fragments on the jeans found in the dumpster had the same "unique" reddish tint as defendant's head hair.  Several experts who testified at the evidentiary hearing testified those fragments had no such tint, nor were they suitable for comparison to defendant's head hair.
> (2) At trial, counsel's questioning of the state's blood expert focused on identifying the source of the unknown blood stains by matching them to the known blood samples with which they might have been consistent.  Johnson's habeas experts testified the focus should have been on how frequently the combinations of the genetic markers identified in the unknown stains occur in the population at large, thus making it less likely that they came from the particular source with which they were consistent.

---

[6]    ___ U.S. at ___, 115 S. Ct. at 1566.

(3) At trial, the state's expert testified that the coke can found in the car bore defendant's bloody palm print. Johnson's habeas experts testifed that faulty fingerprinting procedures suggested strongly that Johnson's [palm print] on the can was not in blood, thereby making available the inference that the print was innocently placed on the can before the bloody murders.

Assuming, *arguendo,* that Johnson received legally deficient representation,[7] we must review the other evidence presented in the case linking Johnson to the crime to determine what effect Johnson's experts could have had on the entire evidentiary picture. The evidence showed that Johnson despised one of the victims, illustrating motive. Johnson's fingerprints on a telephone and a beer can in the victims' apartment placed him at the scene of the crime. A telephone cord was used to bind one of the victims, and the phone with Johnson's prints did not have a cord. Johnson, wearing "fairly new jeans," took a cab to the vicinity of the victims' apartment on the night of the murders. Johnson's palm print was on the coke can in one of the victim's bloody car.

A witness also gave uncontroverted testimony that he sold Johnson a .25 caliber gun that experts testified was used to kill one of the victims. A unique holster belonging to a .38 caliber gun, the caliber used to kill two of the other victims, was found under a vacant trailer next to Johnson's. This holster, with a .38 caliber gun, was stolen from a car in a parking lot accessible to the employees of a plant where Johnson worked. Police found shells and gun cleaning kits in Johnson's trailer which were consistent

---

[7]        *See supra* note 2.

with both .25 and .38 caliber guns.

Other evidence indicated that the car where police found the bodies was extremely bloody. Police found wet boots in Johnson's trailer with human blood on them. They found a wet pair of new jeans in a dumpster in his trailer park which were the size and brand that Johnson's wife had recently bought for him. The blood splatter pattern on the jeans matched the pattern on Johnson's boots. The jeans also had fragments of African-American hair and a Caucasian hair. Johnson is African-American, and the Caucasian hair was consistent with that of one of the victims. Finally, police found a wet pair of underwear with the jeans which were the same brand and size as those found in Johnson's trailer.

Even if Johnson's habeas experts had testified, there would still be no explanation for Johnson's prints being on anything in Cadena's car, for the defense presented no evidence that Johnson and Cadena were friends. In addition, although Johnson's experts would have challenged the probability that certain blood stains could be linked to the victims or Johnson, they could not have explained the blood on Johnson's boots. Nor was there any innocent explanation for the blood splatter on the boots being consistent with the blood splatter on the wet jeans found at a dumpster near Johnson's trailer.

Although Johnson's habeas experts may have been able to weaken some of the state's evidence, there is not a reasonable possibility that their testimony would have given jurors a reasonable doubt

respecting guilt.  Trial counsel's failure to obtain experts did not have a pervasive effect on the inferences to be drawn from the evidence presented in the case.  To the contrary, the jury's decision was strongly supported by the evidence which gives us confidence that Johnson received a fair trial and that the jury returned a reliable verdict; therefore, we find there was no prejudice.

### III

Johnson contends that his Eighth and Fourteenth Amendment rights were violated because the trial court refused to instruct the jury on the parole implications of a life sentence.[8]  Johnson argues that because future dangerousness was the central issue in the Texas capital sentencing procedure at the time of his sentencing, the court should have instructed the jury that Johnson would have to serve at least twenty years of a life sentence before he would be eligible for parole.  Johnson argues that *Simmons v. South Carolina*[9] mandates this result.  The district court rejected this claim, stating that if it were to grant the relief Johnson

---

[8]    During the penalty phase, the court refused Johnson's requested instruction that if Johnson received a life sentence he would not be eligible for parole for twenty years.  In 1988 in Texas, a person convicted of capital murder who received a life sentence was ineligible for parole until he had served twenty years in prison.  *See* TEX. CODE CRIM. PROC. ANN. art. 42.18 § 8(b)(12).

[9]    ___ U.S. ___, 114 S. Ct. 2187, 129 L. Ed. 2d 133 (1994). *Simmons* held that "where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." *Id.* at ___, 114 S. Ct. at 2190.  The Court emphasized that in the majority of cases the decision of whether to inform the jury about parole should be left up to the states; however, when the alternative sentence to death is life without parole, the defendant's legal ineligibility for parole is necessarily relevant to her future dangerousness. *Id.* at ___, 114 S. Ct. at 2196.

requested, it would require the announcement of a new rule in violation of *Teague v. Lane,* 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).[10]

Johnson correctly acknowledges that our opinion in *Alldridge v. Scott,* 41 F.3d 213 (5th Cir. 1994), controls this issue. In *Alldridge* we held that *Simmons* requires a trial court to instruct a sentencing jury about the parole implications of a life sentence only where future dangerousness is at issue, *and* where the defendant is legally ineligible for parole because the state offers a life without parole sentencing alternative to the death penalty. *Id.* at 222. Since Johnson was not legally ineligible for parole, *Alldridge* clearly disposes of his due process argument.[11]

Johnson also claims that the trial court's refusal of his requested parole instruction violated his Eighth Amendment rights. Justice Blackmun's plurality opinion in *Simmons* declined to express

_____

[10] The Court in *Teague* held that absent two exceptions which are not applicable here a new constitutional rule of criminal procedure could not be applied retroactively to cases on collateral review. *Teague,* 489 U.S. at 310, 109 S. Ct. at 1075.

[11] Both the district court and the court in *Alldridge* correctly acknowledged that an application of *Simmons* to a pre-*Simmons* case, such as Johnson's, would violate the nonretroactivity limitation imposed by the Supreme Court in *Teague*. *See Alldridge,* 41 F.3d at 222 n.11.
Johnson argues that *Simmons* did not announce a new rule; thus, *Teague* should not apply. *Teague* defined a new rule as one that "breaks new ground or imposes a new obligation on the States or the Federal Government," and is "not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 108 S. Ct. at 1070 (emphasis in original). *Simmons* did announce a new rule because it held that in some situations the states are no longer free to decide whether an instruction on parole should be given. This is inconsistent with the Court's earlier ruling in *California v. Ramos,* 463 U.S. 992, 103 S. Ct. 3446, 77 L. Ed. 2d 1171 (1983). In *Ramos,* the Court held *inter alia*, that whether or not an instruction on post-sentencing contingencies was appropriate remained properly in the hands of the states. *Ramos,* 463 U.S. at 1013-14, 103 S. Ct. at 3460. Therefore, even if *Simmons* applied to Johnson's case, it would still be barred by *Teague*.

an opinion as to whether the decision was compelled by the Eighth Amendment; therefore, *Simmons* does not rest on Eighth Amendment grounds as Johnson argues. *Simmons,* ___ U.S. at ___, 114 S. Ct. at 2193 n.4. We have consistently held, however, that neither the due process clause nor the Eighth Amendment compels instructions on parole in Texas. *Andrade v. McCotter,* 805 F.2d 1190, 1192 (5th Cir. 1986); *see Knox v. Collins,* 928 F.2d 657, 660 (5th Cir. 1991), *cert. denied,* ___ U.S. ___, 114 S. Ct. 732, 126 L. Ed. 2d 696 (1994). As such Johnson's Eighth Amendment argument also fails on the merits.[12]

IV

Johnson finally contends that the district court erred in refusing to grant him an evidentiary hearing on whether he was denied a fair trial because of a juror's exposure to newspaper and television reports about the trial.[13] A petitioner must establish prejudice to prevail on a claim that he was denied a fair trial as the result of a juror's exposure to prejudicial information. Prejudice requires proof that the juror is biased against the defendant. *Callins v. Collins*, 998 F.2d 269, 277 (5th Cir. 1993), *cert. denied,* ___ U.S. ___, 114 S. Ct. 1127, 127 L. Ed. 2d 435 (1994) (quoting *Murphy v. Florida*, 421 U.S. 794, 800, 95 S. Ct.

---

[12]    Because Johnson bases his Eighth Amendment argument on *Simmons*, his argument would also fail under the nonretroactivity principle of *Teague*.

[13]    Following Johnson's trial, one of the jurors admitted reading and watching newspaper and television reports of Johnson's trial in violation of the trial judge's orders. This juror saw Johnson in shackles during one of the television reports; however, he had already seen Johnson in shackles inside the courtroom.

2031, 2036, 44 L. Ed. 2d 589 (1975)).  News stories are typically considered prejudicial, and therefore may warrant a new trial when jurors are exposed to them, if they contain information that was not presented to the jury or was deemed inadmissible.  *United States v. Hyde,* 448 F.2d 815, 849, (5th Cir. 1971), *cert. denied*, 404 U.S. 1058, 92 S. Ct. 736, 30 L. Ed. 2d 745 (1972).

A federal court must hold an evidentiary hearing on a constitutional claim only when the state court has not provided a hearing, the petitioner alleges specific facts which, if proved, would entitle him to relief, and there is a genuine factual dispute in the record.  *Lincecum v. Collins*, 958 F.2d 1271, 1278 (5th Cir.), *cert. denied*, ___ U.S. ___, 113 S. Ct. 417, 121 L. Ed. 2d 340 (1992) (citing *Johnson v. Estelle*, 704 F.2d 232, 239 (5th Cir. 1983), *cert. denied*, 465 U.S. 1009, 104 S. Ct. 1006, 79 L. Ed. 2d 237 (1984)).  "[B]old assertions on a critical issue in a habeas petition, unsupported and unsupportable by anything else contained in the record, are insufficient to warrant an evidentiary hearing."  *Byrne v. Butler*, 845 F.2d 501, 513-14 (5th Cir.), *cert denied*, 487 U.S. 1242, 108 S. Ct. 2918, 101 L. Ed. 2d 949 (1988).  The petitioner must set forth specific allegations of fact, not mere conclusory allegations.  *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1257, 131 L. Ed. 2d 137 (1995).  Therefore, to warrant an evidentiary hearing, Johnson would have to set forth specific allegations of facts to establish that he was prejudiced by a juror's exposure to prejudicial news

-12-

reports.

In his attempt to get an evidentiary hearing on prejudice, Johnson submitted an affidavit to the district court. The affidavit does not allege facts that, if proven, would demonstrate prejudice. The affidavit simply states that a juror was exposed to newspaper accounts of evidence presented in court and pictures of Johnson in shackles. However, Johnson acknowledges that the juror had already seen him in shackles when he was being brought into the courtroom before he saw him on television. The affidavit does not allege that the juror was exposed to any prejudicial information such as inadmissible evidence.[14]

Johnson argues that the fact that the juror sought out this information demonstrates that the juror was biased against him. While this may demonstrate curiosity, this fact alone is hardly enough to demonstrate prejudice.

Johnson has failed to present specific facts that if proven would demonstrate that he was prejudiced by the juror's exposure to

---

[14] Johnson's interpretation of *United States v. Luffred*, 911 F.2d 1011 (5th Cir. 1990) is strained at best. Johnson claims the case stands for the proposition that juror exposure to information that the juror is already aware of from the courtroom is not necessarily harmless. However even a cursory reading of the case illuminates the differences between that case and Johnson's. In *Luffred* a deputy marshal "imprudently" gave the jury a government chart which had been excluded from evidence because of its *misleading portrayal* of the defendant's involvement in the crimes. Thirty minutes after the jury had been using the chart in their deliberations, the court instructed the jury to disregard the information in the chart, "but then added that the chart had been 'supported by the evidence . . . to a great extent or perhaps completely.'" *Id.* at 1014. We granted the defendant in *Luffred* a new trial because the court's instruction exacerbated the jury's exposure to the *misleading* information. *Id.* at 1015.

In contrast to the jurors in *Luffred*, Williams did not learn new or misleading information about Johnson's case from his exposure to news reports.

-13-

this information; therefore, Johnson is not entitled to an evidentiary hearing.

IV

For the foregoing reasons, we AFFIRM.