Louis S. LEONE, Plaintiff,

v.

Robert CREIGHTON, individually and as an employee of the Suffolk County, New York District Attorney's Office, Joan Leone, and County of Suffolk, New York, Defendants.

No. 92 CV 1321 (FB).

United States District Court,
E.D. New York.

Nov. 29, 1996.

Arthur V. Graseck, Jr., Port Washington, NY, for Plaintiff.

Robert J. Cimino, Suffolk County Attorney by Arlene Zwilling, Asst. Co. Atty., Hauppauge, NY, for Defendants.

### MEMORANDUM AND ORDER

BLOCK, District Judge:

This case is another casualty of *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), which effectively closes the civil rights door under 42 U.S.C. § 1983 to tort claims that are not based on a specific textual constitutional proscription.

In 1992, plaintiff Louis S. Leone ("Leone") brought this action pursuant to 42 U.S.C. § 1983 against defendants Joan Leone ("Joan"), his wife, Robert Creighton ("Creighton"), Joan's brother-in-law, individually and in his official capacity as an investigator for the Suffolk County District Attorney, and the County of Suffolk ("County"). Leone alleges that the individual defendants, by conspiring to launch an unfounded criminal harassment charge against him in state court which was dismissed on its merits, violated his constitutional rights to substantive due process and equal protection and committed the state torts of malicious prosecution and battery.[1] The County's federal liability is based upon *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and the state claim of malicious prosecution against the County is predicated upon the doctrine of respondeat superior. Creighton and the County move to dismiss the federal claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and ask the Court not to exercise supplemental jurisdiction over the pendent state claims.[2]

Leone has cross-moved for permission to amend his complaint for a second time so that he may assert additional constitutional claims, the violation of his First Amendment rights to freedom of association and freedom to travel.[3] These claims are primarily based upon Joan and Creighton's alleged collusion to illicitly cause a protective order to be issued against Leone, which he alleges precluded him from occupying his home and living with his children.

For the reasons that follow, the Court denies Leone's motion to amend; grants Creighton and the County's motion to dismiss the federal claims; *sua sponte* dismisses the federal claim against the non-moving party, Joan; and retains jurisdiction over the pendent state claims.

### BACKGROUND

#### A. The Complaints

##### 1. The First Amended Complaint

In support of his federal substantive due process claim and his state malicious prosecution and battery claims, Leone's amended complaint alleges the following: On May 29, 1991, "without justification or excuse," Joan punched Leone in the eye, scratched his lip and torso, and "beat him on the back with a broom handle." Joan then called the police. When they arrived, Joan admitted that she had assaulted Leone. One of the police officers observed Leone's injuries and asked him whether he wanted the police to arrest his wife. Leone declined.

Creighton then arrived and identified himself as an investigator for the County's District Attorney's Office. He told the police that he wanted Leone "locked up." When they questioned the basis for the arrest, Creighton responded that it was "mental cruelty." The police determined that there was no probable cause to arrest Leone. Creighton then threatened to "misuse his official position to cause [Leone] to be jailed if [he] did not vacate his home." Leone refused to

1. The equal protection claim has been withdrawn.

2. Joan has neither answered nor moved as of the date of this Memorandum and Order.

3. Leone amended his complaint once as a matter of right pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. *See* Mem. & Order, 1995 WL 151771, dated March 28, 1995.

leave. Shortly thereafter, Joan and Creighton left together. Creighton subsequently attempted to separately persuade a police road sergeant, a police officer at the Fourth Police Precinct, and the Commanding Officer of that precinct, to arrest Leone. However, each of them refused, concluding that probable cause was lacking.

Creighton nevertheless "caused a baseless charge of harassment" to be brought against Leone in order to enable Joan "to obtain a corrupt and unwarranted advantage over plaintiff with respect to then pending matrimonial litigation." Leone does not claim that he was arrested as a result of this charge or that he was incarcerated or subject to bail.[4] Creighton also allegedly used his position to aid Joan with the matrimonial litigation by manipulating the timing of Leone's criminal trial. He allegedly caused Assistant District Attorney Joseph Lombardo to call Robert Green ("Green"), Leone's counsel on the harassment charge, and falsely represented to Green that Leone's court appearance had been advanced by the judge assigned to the case. An associate of Green accordingly appeared before the judge on the putative advanced date, at which time the judge informed him that he had not advanced the case and was puzzled by the parties' presence in court.

Creighton thereafter "personally supervised the prosecution of the plaintiff by the Office of the District Attorney on behalf of [Joan]", and arranged for her to have "an escort associated with the County's District Attorney's Office whenever she was in or in the area of the criminal court or traveling to or from the prosecutor's office in connection with preparing for trial."

The harassment charge was eventually dismissed on the merits after trial, at which time the court stated:

... often complainants will seek to obtain in a criminal court what amounts to an order of exclusive use of the occupancy of the marital dwelling pending trial of the underlying marital action where such relief ... has either been denied or is pending in the Supreme Court.

The court also commented: "As to the charge of harassment ... the Court notes at the outset that only the defendant [plaintiff herein] received any physical injuries."

Leone also alleges that the County's District Attorney's Office had an "institutionalized practice" of approving and failing to prevent the type of employee misconduct represented by Creighton's behavior.

### 2. The Proposed Second Amended Complaint

In support of his First Amendment claims to freedom of association and freedom to travel and in further support of his substantive due process and malicious prosecution claims, Leone's proposed second amended complaint alleges the same facts as the amended complaint, except it adds the following:

The prosecution on this baseless charge also resulted in a protective order which included a provision that plaintiff remain away from his marital home at which four of his children resided. Plaintiff was thereby deprived of the right to associate with his four children over a period of several months.

### DISCUSSION

As often reiterated in cases involving motions to dismiss a complaint, a court must accept the allegations as true and draw all permissible inferences in favor of the non-movant. *In re Maxwell Communication Corp.*, 93 F.3d 1036, 1044 (2d Cir.1996). The motion should be granted "only if it plainly appears that the non-movant 'can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (citing *Con-*

---

4. Leone's amended complaint alleges that he was incarcerated. However, Leone's attorney acknowledged during oral argument that this was not true, and the complaint was deemed amended accordingly:

THE COURT: ... There was no incarceration here?

MR. GRASECK: No.

THE COURT: So we will deem 32 to be amended to provide that there was no incarceration.

(Tr. at 10) (references are to the page numbers of the transcript of the oral argument held by this Court on June 7, 1996).

*ley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

## A. Substantive Due Process

■ As the Second Circuit succinctly stated in *Singer v. Fulton County Sheriff,* 63 F.3d 110, 114 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996), "under *Albright,* the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution." As explained in *Singer,* the rationale for this conclusion, as culled from Chief Justice Rehnquist's plurality opinion in *Albright,* is that " 'the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended.' " *Singer,* 63 F.3d at 115 (quoting *Albright,* 510 U.S. at 271–72, 114 S.Ct. at 812). Therefore, so long as "a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.' " *Singer,* 63 F.3d at 115 (quoting *Albright,* 510 U.S. at 273, 114 S.Ct. at 813).

Invariably, the search for the specific constitutional infringement that elevates the common law tort of malicious prosecution to a federal § 1983 claim is "the deprivation of liberty guaranteed by the Fourth Amendment." *Singer,* 63 F.3d at 116.[5] This translates to "the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty." *Id.* Such a seizure entails "the perversion of proper legal procedures ... either in the form of a

warrant, in which case the arrest itself may constitute the seizure, ... or a subsequent arraignment, in which case any post-arraignment deprivations of liberty (such as being bound-over for trial) might satisfy this constitutional requirement." *Id.* (citations omitted). ·

■ Plaintiff in the present case alleges the classic elements of the common law tort of malicious prosecution,[6] but makes no claim of a Fourth Amendment deprivation. His complaints simply allege that he was the subject of "a baseless charge of harassment." He does not allege that he was arrested pursuant to a warrant, and he does not contend that he was subjected to any incarceration or bail condition that would arguably rise to the level of a post-arraignment liberty restraint. In sum, plaintiff is obviously of the opinion that the Fourth Amendment is not implicated when one is simply required to respond to the criminal process. Thus, plaintiff conceded at oral argument that the Fourth Amendment was not applicable:

> THE COURT: There is no malicious prosecution predicated on the Fourth Amendment because there is no seizure, we agree?
>
> MR. GRASECK: Yes. ·
>
> THE COURT: Whatever that concept of seizure is all about, we have nothing here at all that rises to that level.
>
> MR. GRASECK: Right.

(Tr. at 13.)

Plaintiff's opinion finds support, in part, in *Singer,* where the court implicitly stated, in dicta, that post-arraignment release without bail does not implicate a constitutional liberty deprivation. *Singer,* 63 F.3d at 117.[7] Those

---

**5.** The Second Circuit recognized in *Singer,* however, that "[i]t is theoretically possible ... for a plaintiff to premise a malicious prosecution claim on some other constitutional right" and, consequently, "it will be the standard governing that right that will determine whether there has been a constitutional violation." *Singer,* 63 F.3d at 116 n. 5.

**6.** The common law tort of malicious prosecution contains four elements that a claimant must establish: "(1) that the defendant started a criminal proceeding against her; (2) that the proceeding terminated in the plaintiff's favor; (3) that

there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir.1996) (quoting *Colon v. City of New York,* 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 1250, 468 N.Y.S.2d 453, 455 (1983)).

**7.** The court in *Singer* refrained from deciding whether there was a seizure, noting that there were no factual findings as to whether Singer was required to post bail. The malicious prosecution aspect of the court's decision was, accordingly, decided on the basis of the elements of the common law tort. The court held in that respect

few district courts in the Second Circuit that have grappled with the "malicious prosecution-seizure" issue subsequent to *Albright* and *Singer* have taken a similar view. *See Niemann v. Whalen,* 911 F.Supp. 656, 668–71 (S.D.N.Y.1996); *Subirats v. D'Angelo,* 938 F.Supp. 143, 149 (E.D.N.Y.1996) (Spatt, J.). However, the Supreme Court has yet to come to rest with this proposition. Indeed, in light of Justice Ginsburg's position in *Albright* that a party is "seized" for trial "so long as he is bound to appear in court and answer the state's charges," *Albright,* 510 U.S. at 279, 114 S.Ct. at 816 (Ginsburg, J., concurring); the broad-sweeping concept of "liberty" articulated in Justices Stevens' and Blackmun's dissent, *id.* at 292–298, 114 S.Ct. at 823–825; and the express disclaimer by Justice Rehnquist in the plurality opinion that "[w]e express no view as to whether petitioner's claim would succeed under the Fourth Amendment," *id.* at 275, 114 S.Ct. at 813, the courts are still traveling in relatively uncharted seizure waters.

In any event, in light of the limited scope of plaintiff's pleadings and his attorney's Fourth Amendment concession in open court, plaintiff is relegated to his contentions that his claims transcend the federal strictures on malicious prosecution and are cognizable under substantive due process because of the individual defendants' alleged outrageous behavior, and under the First Amendment.

■ Creighton's insinuation into the prosecutorial process may well serve to satisfy the requisite malice element of common law malicious prosecution, but it does not rise to the level of action that is "arbitrary, conscience-shocking, or oppressive in a constitutional sense...." *Richmond Boro Gun Club, Inc. v. City of New York,* 97 F.3d 681, 688 (2d Cir.1996) (quoting *Kaluczky v. City of White Plains,* 57 F.3d 202, 210 (2d Cir. 1995)). As the Court aptly noted in *Albright,* "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright,* 510 U.S. at 272, 114 S.Ct. at 812. Moreover, substantive due process has

greater force for claims which have no legal "home." *See id.* at 286, 114 S.Ct. at 819 (Kennedy, J. & Thomas, J., concurring) ("[I]f a State did not provide a tort remedy for malicious prosecution, there would be force to the argument that the malicious initiation of a baseless criminal prosecution infringes an interest protected by the Due Process Clause and enforceable under § 1983"); *see also id.* at 288, 114 S.Ct. at 820 (Souter, J., concurring) ("This rule of reserving due process for otherwise homeless substantial claims no doubt informs those decisions [citations omitted] in which the Court has resisted against relying on the Due Process Clause when doing so would have duplicated protection that a more specific constitutional provision already bestowed."). Given the admonition of *Albright* that courts should be circumspect in expanding the reach of substantive due process, the Court concludes that plaintiff's allegations are not of that constitutional dimension.

## B. First Amendment Claims.

■ Nor does plaintiff allege any claim that is cognizable under the First Amendment. Although the court in *Singer* recognized that a claim of malicious prosecution can theoretically be based upon a specific constitutional right other than the Fourth Amendment, *see supra* note 5, plaintiff's conclusory First Amendment assertion, contained in passing in his proposed second amended complaint, that defendants had "maliciously prosecut[ed] him and thereby depriv[ed] him of his rights to due process, freedom of association and freedom to travel," is not supported by any First Amendment allegation that is related to his malicious prosecution claim. Rather, plaintiff's First Amendment claims center on his contention that the individual defendants unlawfully obtained an order of protection, which precluded him from associating with his children and traveling to his home because he felt "he wasn't free to stay in the house." (Tr. at 8.) The order of protection, however, simply required plaintiff to "[a]bstain from offensive conduct against [his wife and chil-

that the criminal proceeding was not dismissed on its merits and thus, even if there had been a

seizure, there was no viable malicious prosecution claim.

dren]," and to "[r]efrain from acts of commission or omission that tend to make the home not a proper place for [his wife and children]." (Defs.' Reply Affirmation, Ex. A.) [8]

 Accordingly, the Court denies the motion to further amend the complaint, *see* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487, at 637–646 (2d ed. 1990) (citing cases that deny motions to amend when amendment would be futile), and dismisses all of plaintiff's federal claims, including the one against the non-moving party, Joan. The federal claim against Joan is dismissed *sua sponte* since it is inextricably linked to the federal claim against Creighton. *See Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 6 (2d Cir.1990) (affirming dismissal of complaint against all defendants, including defendant who did not make appearance in case nor join motion to dismiss, "because the issues concerning [non-movant] are substantially the same as those concerning the other defendants"). The federal claim against the County is dismissed since liability against the County is based upon *Monell,* which has no separate viability in the absence of underlying individual constitutional liability.

## C. Retention of Supplemental Jurisdiction Over Pendant State Torts.

 Even though the Court is dismissing all of plaintiff's federal claims, it will nonetheless retain supplemental jurisdiction over the pendant state claims. While usually the Court would dismiss these claims, *see Castellano v. Board of Trustees,* 937 F.2d 752, 758 (2d Cir.) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well") (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)), *cert. denied,* 502 U.S. 941, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991), it is within its province, in the exercise of a sound discretion, to keep them. As stated by the Second

Circuit in *Purgess v. Sharrock,* 33 F.3d 134 (2d Cir.1994):

> If, however, the dismissal of the federal claim occurs "late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary."

*Id.* at 138 (quoting 28 U.S.C.A. § 1367, Practice Commentary, at 835 (1993)) (retaining jurisdiction over state claims when federal claim was dismissed at close of evidence); *see also Enercomp, Inc. v. McCorhill Publishing, Inc.,* 873 F.2d 536, 545–546 (2d Cir.1989) (retaining jurisdiction after dismissal of federal claims because of amount of time and resources invested and in interest of judicial economy); *Ackerman v. National Property Analysts, Inc.,* 887 F.Supp. 494, 510 (S.D.N.Y.1992) (retaining jurisdiction over state claims after 12(b)(6) dismissal of federal claims); *Philan Ins. Ltd. v. Frank B. Hall & Co., Inc.,* 786 F.Supp. 345, 347 (S.D.N.Y.1992) (same); *Philatelic Foundation v. Kaplan,* 647 F.Supp. 1344, 1348 (S.D.N.Y.1986) (same). Considering that the parties began this litigation over four years ago, at a time prior to *Albright* and *Singer,* and have completed discovery, the Court holds that it would be contrary to the interest of judicial economy and manifestly unfair to require plaintiff to restart in state court.

## CONCLUSION

Plaintiff's motion to further amend the complaint is denied. The motion to dismiss of defendants Creighton and the County is granted as to plaintiff's federal claims. The Court *sua sponte* dismisses the federal claim against defendant Joan Leone. The Court retains supplemental jurisdiction over plaintiff's state claims.

---

**8.** Creighton and the County submitted a copy of the protective order as an exhibit to their Affirmation in Reply and Opposition to Cross–Motion. Leone does not challenge its accuracy, and the Court may properly consider it in determining whether to grant plaintiff's motion to further amend his complaint.